IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VIVINT, INC. (formerly APX ALARM SECURITY SOLUTIONS, INC.),<br><br>Plaintiff,<br><br>v.<br><br>ELITE SECURITY SERVICES, INC. a Utah corporation, JEFF WILSON, SHAWN HANSON, CHASE ERICKSON, TAYLOR HARRIS, BLAKE MCCARTY, JOHN IABONI, DERK WATSON, JASON TIPPETTS (individuals) and JOHN DOES I through X,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No.  2:12-cv-00692<br><br>Judge Clark Waddoups |

**INTRODUCTION**

Plaintiff Vivint, Inc. moves for a preliminary injunction against Defendants Elite Security Services, Inc., and individual Defendants Jeff Wilson, Shawn Hanson, Chase Erickson, Taylor Harris, Blake McCarty, John Iaboni, Derk Watson, Jason Tippetts and "John Does I through X". [Dkt. No. 4.]  Vivint alleges that it is in the business of providing electronic security and home automation systems and services to residential customers throughout the United States and Canada.  Plaintiff further alleges that Elite is a competitor engaged in selling, installing and servicing ADT electronic security systems.  Vivint alleges that the individual defendants are sales representatives for Elite. [Dkt. No. 2-1.]

Both Vivint and Elite contact residential customers to offer and maintain security systems and services.  Vivint alleges that it maintains existing contracts with its customers to provide

1

security system monitoring services, which it alleges Elite through its sales representatives has attempted to steal by making false and misleading statements to Vivint's customers.  In an effort to prevent such further misconduct, Vivint seeks to enjoin the Defendants "from soliciting Vivint customers, including but not limited to approaching or soliciting any home or business establishment with visible Vivint signage for purposes of making an in-person sales call or solicitation to any Vivint customer." [Dkt. No. 4 ¶ 1.]  Vivint further seeks to enjoin nine specific misrepresentations from being made to its customers, including for example statements that Vivint has been bought out or taken over by ADT or that the Vivint customer's security system no longer works.  [Dkt. No. 4 ¶ 2.]

After the parties submitted memoranda, with evidence, in support and opposition to the motion, the court heard additional evidence and argument.  At the conclusion of the hearing, and based upon the arguments and concessions made during the argument that the relief being sought was overly broad, the court requested Vivint to prepare a proposed form of preliminary injunction order stating the specific remedies it is seeking.  Vivint has filed the proposed form of order together with a memorandum arguing why the relief it seeks should be granted. [Dkt. No. 26-1.] Elite has opposed the proposed form of order and suggested changes, if any preliminary injunction is to be issued. [Dkt. No. 28.]

In its proposed form of order, Vivant requests the court to enjoin the Defendants "from making false or misleading misrepresentations to any and all Vivint customers to convey the false impression that" any of the nine alleges misrepresentations are true, to enjoin Elite from "any conduct that leads a customer to reasonably believe the Elite sales representative is affiliated with the customer's existing security company, and otherwise unfairly competing with Vivint." [Dkt. No. 26-1 ¶¶ 1-2.]  Vivint then proposes a rather elaborate enforcement

mechanism in which Elite would be required upon receiving notice from Vivint of an alleged violation to restore the customer to Vivint or pay a $2,000 liquidation fee. If Elite contests, but the court determines, that it has violated the proposed order and the customer desires to return to Vivint, Vivint would be required to pay a "coercive fine" of $500 per day until Elite complies, costs for reinstalling any equipment and lost service fees. Should the customer nevertheless desire to remain with Elite, Elite would be required to pay a liquidated amount of $4,000.

In opposition to the motion, Elite presented evidence, largely uncontested, that its practices require all sales representatives to execute an agreement, code of ethics and code of conduct requiring them to act with honesty and integrity. The code of ethics prohibits deceptive or unlawful business practices, including specifically the conduct about which Vivint complains. In addition, Elite requires each of its sales offices to spend a minimum of 20 hours each sales season to study the code of ethics and weekly to spend one hour reviewing with its sales representatives the code of ethics in its sales meetings. Elite has enforcement procedures to discipline sales representatives who violate the code of ethics, including termination. The evidence further supports a conclusion that most of the incidents about which Vivint complains had resulted in discipline of the sales representative involved in the conduct. For the reasons stated hereafter, the court **DENIES** Vivint's motion for preliminary injunction.

## ANALYSIS

A party seeking a preliminary injunction is required to show "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *GMC v. Urban Gorilla, LLC,* 500 F.3d 1222, 1226 (10th Cir. 2007). Further, as the court observes in

*GMC*, "a preliminary injunction is an extraordinary remedy" which "is the exception rather than the rule." 500 F.3d at 1226 (quoting *GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir. 1984)). Finally, when a party seeks an injunction that would alter the status quo, that party "bears a heightened burden and 'must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms.'" *Id.* (citing *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft,* 389 F.3d 973, 976 (10th Cir. 2004) (en banc, per curiam), *aff'd*, 546 U.S. 418, 126 S. Ct. 1211, 163 L. Ed. 2d 1017 (2006)).

The relief Vivint seeks by this motion would not only alter the status quo, but would be, if granted, truly extraordinary. Vivint fails to meet the requirements necessary to obtain such relief. First, Vivint failed to present evidence that Elite encouraged, rewarded or took other actions to promote the conduct about which Vivint complains. The evidence supports the opposite conclusion. Elite has in place an active and diligent procedure and practice to prohibit its sales representatives from engaging in the conduct Vivint seeks to enjoin. At oral argument the court requested counsel for Vivint to clearly state what actions it would have the court impose upon Elite to preclude the conduct by sales representatives that Vivint claims is continuing. Vivint failed to present any additional actions or procedures that it contends Elite should or could adopt to stop such occasional errant behavior. The status quo is that Elite has in place policies, practices and procedures designed to prevent the very conduct that Vivint seeks to enjoin. There is no evidence that Elite has failed to diligently apply these policies, practices and procedures. Thus, the relief Vivint seeks would be a change in the status quo to impose a mechanism that would effectively shift the burden to Elite to disprove misconduct by its sales representatives once Vivint makes an allegation. If such relief were permissible at all, Vivint would be required to make a strong showing of both the likelihood of success on the merits and

that the balance of harms favors it.  Vivint fails to meet these requirements.

To be held liable for the alleged misconduct of its sales representative, Vivint must prove that it gave direction and exercised control over the sales representatives.  *See, e.g. Jaeger v. W. Rivers Fly Fisher,* 855 F. Supp. 1217, 1222 (D. Utah 1994); *Glover ex rel. Dyson v. Boy Scouts of America,* 923 P.2d 1383, 1385 (Utah 1996).  Elite argues that Vivint fails to offer sufficient evidence to show a likelihood of success on this element. Elite contends that the sales representatives are independent contractors and it cannot be held responsible for their misconduct.  The evidence presented, however, demonstrates that there is at least a legitimate issue of fact about the degree of control Elite exercises over its sales representatives.  Elite specifies in substantial detail the sales practices to be followed by its sales representatives, including sales approaches, required meetings and times by which they must be in the field pursuing sales contacts.  There is sufficient evidence from which a fact finder may conclude that the sales representatives were acting within the scope of authority conferred upon them by Elite sufficient to hold Elite legally responsible for their alleged misconduct.  Nevertheless, the fact finder would, on this evidence, not be required to reach such a conclusion.  Indeed, the strong and largely uncontradicted evidence that Elite in policy, practice and procedure prohibits its sales representatives from engaging in the alleged misconduct may well lead a fact finder to conclude that any sales representative who so conducts him or herself is knowingly acting contrary to his or her authorization and would not be acting within the scope of authority.  The fact that the evidence would reasonably allow such a conclusion precludes the court from finding that Vivint has met the requirement for a strong showing of success on this element.

Vivint has also failed to make a strong showing that the balance of harms favors issuing the requested injunction.  The evidence offered by Vivint shows at best that it has suffered

minimum harm from the alleged misconduct. When customers have complained to Vivint about misrepresentations allegedly made by Elite sales representatives, it has been able to provide correct information and in many cases restore its contractual relationship with the customer. Moreover, Vivint has the ability to identify and claim monetary damages for lost revenues from the loss of contracts for security services and monitoring. Where any injury can be remedied by a monetary award of damages the law does not favor granting injunctive relief.

Injunctive relief should be cautiously granted particularly when it may interfere or constrain legitimate competitive conduct. The relief Vivint initially requested would have precluded Elite sales representative "from soliciting Vivint customers." This prohibition would have extended to preclude sales representative from even "approaching or soliciting any home or business establishment with visible Vivint signage for purposes of making an in-person sales call or solicitation to any Vivint customer." [Dkt. No. 4 ¶ 1.] The extraordinary breadth of the relief Vivint initially sought reveals that its concern is as much about facing strong competition as it is about remedying or precluding misconduct. Although Vivint subsequently narrowed the breadth of its request, its most recent articulation of the relief it seeks raises similar concerns about the impact it may have on competition. The proposed order would preclude Elite and anyone acting on its behalf from making nine enumerated misrepresentations relating to Vivint. The proposed order would further preclude any conduct that "leads a customer to reasonably believe the Elite sales representative is affiliated with the customer's existing security company, and **otherwise unfairly competing with Vivint**." [Dkt. No. 26-1 ¶ 2 (emphasis added).] The proposed order would require Elite to respond within three business days to any written notice, supported by details and audio documentation, from Vivint that it believes a violation has occurred by paying liquidated penalties and costs or by denying the conduct and facing a contempt hearing. The

effect of the order would be not only to require Elite to continue to emphasize and enforce its existing practice to prohibit the alleged misconduct, but to face risks that other sales conduct will be deemed by Vivint to be unfair competition.  When a plaintiff challenges the conduct of a competitor, the court should exercise great caution to assure that legitimate competition is not constrained.  Given that Vivint can identify no existing conduct by Elite that should be enjoined, but only provide a mechanism to deal with prospect and speculated misconduct, the balance of harm weighs against granting the relief Viviant seeks.

Finally, Vivint fails to establish that it will suffer irreparable harm if the injunction is not granted.  Proof of irreparable harm is required and is often the most important of all factors in determining whether a preliminary injunction should issue. *Port City Props. v. Union Pac. R.R.*, 518 F.3d 1186, 1189 (10th Cir. 2008) (observing that "courts have consistently noted" that "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction"). The requirement is, however, not "an easy burden to fulfill." *Dominion Video Satellite, Inc. v. Echostar Satellie Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004) (citing *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)). To satisfy the requirement the moving party must prove that its injury is "both certain and great, and that it must not be merely serious or substantial." *Id.* (citing *Prairie Band of Potawatomi Indians*, 253 F.2d 1234 at 1250 (10th Cir. 2001)). The moving party must also demonstrate that its injury cannot be satisfied by a remedy after trial of an award of monetary damages and that the harm alleged is "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *See Chemical Weapons Working Group, Inc. v U.S. Dept. of the Army*, 963 F. Supp. 1083, 1095 (D. Utah 1997) (internal emphasis and quotations omitted).

The proof of harm proffered by Vivint fails to meet these requirements.  First, Vivint's

argument that a money award would not address its harm is unconvincing.  Vivint relies on relatively few examples of incidents in which it claims to have actually lost contract revenue.  There is no evidence that such a loss cannot be documented and recovered in a damage award.  Moreover, Vivint fails to offer persuasive evidence that the handful of incidents it relies upon has damaged its reputation in a way that cannot be addressed in a future award, and there is certainly no evidence that Vivint's continuation and success is in jeopardy.  In fact, the detailed provisions for relief in the form of various liquidated damages scenarios proposed by Vivint in its proposed Preliminary Injunction Order actually cut against the idea that any injury or harm experienced by Vivint could not be compensated by an award of money damages. Although Vivint may be justifiably irritated and properly concerned about misconduct by sales representatives, that concern should be addressed by proving the allegations of its complaint.  It may well be correct that the industry reputation is flagging because of such conduct.  Indeed, Vivint , previously known as APX Alarm Security Solutions, Inc., itself has faced allegations that its own sales representatives have engaged in similar misconduct.  [*see* Dkt. No. 28-1.]  Those issues, however, are best addressed by litigation on the merits of the claim.  At this stage of the proceedings, the evidence simply fails to justify the drastic, although novel and creative, remedies Vivint requests.

## CONCLUSION

For the reasons stated, the motion for preliminary injunction [Dkt. No. 4] is DENIED.

SO ORDERED this 18th day of December, 2012.

BY THE COURT:

_____
Clark Waddoups
United States District Judge